United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this Honorable Court. Good morning. We have reached the the final day of a week of oral argument for this panel and have three cases to hear this morning. Counsel, you know we're familiar with your briefs, the authorities cited in your briefs and at least portions of the record, so you don't have a lot of time this morning. You should feel free to go straight to the heart of your argument. You don't need to to familiarize us with the background. We know what your case is about. We're probably going to have some questions, but be mindful of the clock when it expires. It's time to wrap it up in the event that you're answering the question from the court. Of course, feel free to finish your answer, but do be mindful of the clock. Our first case to hear this morning is United States v. Bhopal. Ms. Cain. Good morning, Your Honor. I would like to absent court inquiry into issue one. I would like to focus on issue two, which is that the full-on lifetime ban on internet access for Mr. Bhopal is plainly unconstitutional under Packingham. Mr. Bhopal, as you're aware, although the COVID-19 pandemic I think has established firmly for all of us, but I don't want to speak necessarily for everyone about the utter necessity of the internet in modern life. And Packingham recognized that in 2017 when it held that convicted sex offenders have a First Amendment right to access social media. That, of course, is a narrower ban than the ban that was imposed by the district court on Mr. Bhopal in this case, which amounts to combining two of his restrictions, his special conditions, to a lifetime complete ban on his access to the internet absent work authorization, which is not a meaningful exception under the First Amendment. The North Carolina law at issue in Packingham was one that required registered sex offenders or prohibited them from accessing social networking websites without regard to whether they were on some kind of supervised release or probation or they were in some way within the custody of the criminal justice system. Isn't that right? Yes, Your Honor, and I know that that many of your sister circuits have hinged their decision that this isn't plain error on that distinction, that Packingham didn't distinguish between people who were on supervised release or off supervision. However, I think if the court looks deeper into the Packingham decision, you'll agree that that actually wasn't the central holding of Packingham, and the court chose not to explicitly distinguish to say, well, actually people who are on supervised release, this would be totally constitutional for them. Of course, the law applied equally to people who are on supervised release and didn't, and it is notable that the court did not mention, did not put in a footnote, just so you know, this would be fine if it were only for people on supervised release or probation, and the law certainly did apply to people on supervised release and probation. That's clear from the party's briefing in Packingham. But it applied to more than that, right? Yes, Your Honor. If the circuits are split on an issue like that, can we say that it's plain error? I think so, Your Honor, because what they're split on is whether it's plain, not whether it's an error. So I think the question, that's, so my understanding of... Well, the courts that have said it's not plain error have not said that it was error. They've not decided. Mm-hmm. Yes, they've refrained from making that decision because they find that Packingham does not make the error plain. However, again, I think if we dig in, and in particular, Your Honors, I know you're just as familiar, probably more familiar with Packingham than I am, but if I may draw your attention to the concurrence, which I think is particularly relevant now because the makeup of the court has changed. So the concurrence was Alito, Chief Justice Roberts, and Thomas, and the majority would now be three people, three justices, Justice Breyer, Justice Sotomayor, and Justice Kagan. And so in the concurrence, Your Honors, we'll notice that there was absolutely no mention of the main issue being this is post-custodial. That's not what made it not narrow enough. What made it not narrow enough, and I'll quote from the concurrence at 1741, the fatal problem for Section 14202.5 is that its wide sweep precludes access to a large number of websites that are most unlikely to facilitate the commission of a crime against a child. And that is the same problem that we have here. So I think that the distinction... Isn't the problem, Miss The statute invalidated in Packingham was not tailored to any particular offender or offense. It barred all sex offenders, which comprehends a wide variety of acts and conduct. Whereas in this case, for better or worse, the precisely and specifically to a particular offender and a particular offense. And if that be the case, the problem that I'm having with the argument is I'm hard pressed how such an error would have been plain or obvious under plain error review, even if we accept your argument that it was I would like to answer in two parts. First, yes, this is this is a particular sentence imposed on a particular person, Mr Bobal. I know your honors are familiar with the record. I would submit that there was no discussion about why and how these conditions were specifically tailored to his offense. I think that's relevant. I think if your honors look at the way that this these of the present investigation report without any discussion, the district court certainly did not acknowledge Mr Mr Bobal's First Amendment right. Well, are we to discern from reading the transcript that the district court always did this in every case, which was similar to this one? I don't think your honors opposed to. He just didn't say any more than he said. But I'm press to see how we could fairly say the district court didn't tailor the penalty to the defendant. He had all of his history in front of him and to a particular offense, both of which were absent from packing him. Yes, I think it be tailoring for First Amendment purposes is exactly what Packingham did, and that's what the court here didn't do. And so the question is, when we ask, is this narrowly tailored? The Supreme Court in Packingham did not suggest it could be narrowly tailored if it applied only to certain offenders. The Supreme Court didn't make that distinction. I think that's relevant here. So if the trial judge had said I am tailoring this penalty narrowly and specifically to this defendant, that would have been enough. And the saying that no, your honor, it wouldn't have been. It wouldn't have been enough because the way that narrow tailoring works from my my understanding, my reading of Packingham and other cases is that the government may not suppress lawful speech as a means to suppress unlawful speech. And so what Packingham holds, and it applies to Mr. Boball, is that what the court needed to do is narrowly tailor, not just your Mr. Boball, here are your priors, this is why this is necessary, but narrowly tailor such that so that the ban that she imposed for the rest of his life did not suppress lawful speech. And Packingham shows the court shows all of us how that's done and why even a more narrow ban just on some social social networking websites is overly broad. And I think that your your client, Mr. Brokaw, could could seek the permission of his probation officer and obtain it to use the computer, which is different from the law at issue in special conditions imposed, is that the court cannot possess or access or use a computer with with access to the internet without prior approval of the court, which of course is more burdensome than probation. But combining that with the next condition, the defendant shall not possess or use any computer, semicolon, except the defendant may, with the prior approval of the court, use a computer for those two restrictions. The result is Mr. Ball has absolutely no free speech, no ability, he can go to the court and this this defendant who's on supervised release can seek permission from the court to use it. For example, if he needs it, he needs to use it for work, he can he can get that permission, right? Your Honor, I think for work, that's the only exception. My reading of these two combined is that he could ask the court and when he's released in 15 years for permission to access the internet and use a computer for work. However, that is not meaningful for purposes of the First Amendment. I think it is meaningful under 3583 D, which requires that the conditions impose no greater restriction on liberty than necessary to meet three goals, deterrence, protection of the does speak to that, the narrow tailoring as to rehabilitation, but then we have what about his free speech rights, and he has none on the internet for the rest of his life. Question this way, if I can, yes, of course, holding aside Packingham, because we're on plain error review here. We're not looking at it. De novo. Is there any 11th Circuit case that's contrary or directly contrary to what the district court did here? Directly contrary? No, Your Honor. So the whole argument turns on Packingham, right? Um, yes, Packingham has got to yield the conclusion that there was error that was plain and obvious, and affected his substantial rights. Right? Packingham is the ballgame. And Packingham is, yes, the whole thing. We read Packingham as being different, not on all fours, all threes, or even all fours, but Packingham is the ballgame, and if you choose, for the reasons that we've already highlighted, then you could not prevail. Could you on plain error? The whole argument turns on Packingham. Your Honor, I'm, you know, it's such a big statement. I know you want me to make it. No, no, I just, I want you just to help me because I couldn't find any 11th that so illuminated the field that that case must yield the conclusion that there was not only error, but that it was plain and obvious. I think, Your Honors, if you go all the way back to 2003, to your decision in Zinn, you'll see that the court, without saying it was applying intermediate scrutiny. What do you do with Carpenter in 2015? I do see my time is up, but of course, I'll answer. Carpenter, Your Honor, I think was a reasonableness. Your Honors wrote it, so you know better than I do. But the issue there was, was the internet ban reasonable? And was it constitutional? And I think that does make a difference. Of course, it's also pre-Packingham. And I will note, Your Honors, put in a footnote, we're not finding whether it's error. So I think that tells us there wasn't a prior case that said, this is completely, absolutely constitutional, no matter what, because Your Honors would have said it, it's not error. But in a footnote, instead, you said, we're just holding it's not plain because the Supreme Court and ourselves, we haven't spoken on it yet. Okay. Thank you, Ms. Cain. You've saved three minutes for rebuttal. Mr. Judge Pryor, and may it please the court. My name is Jonathan Kavrinsky, and I represent the United States. Judge Marcus's last line of questioning with respect to the whether Packingham controls is the crux of this entire case. If Packingham directly resolves this appeal, then Mr. Bobo prevails. But because the facts of Packingham are distinguishable for the two reasons that have already been articulated, it was a supervise, it was a law that applied in to individuals beyond those who are under the control of the criminal justice system, and it applied to individuals whose nature of the crime didn't necessarily constitute internet based crimes. And for those two reasons, it's distinguishable. So it's holding cannot control. And then the question turns to that last issue, whether there's an 11th Circuit holding that somehow would contradict the government's position, or, frankly, if there's a circuit holding elsewhere in the country, and if there was a split, obviously it can't be plain error. But there isn't even a split. The only case on the defense behalf is Helena, which wasn't plain error review. And in Helena, what the what the court there noted is that they weren't extending Packingham entirely. And I'd just like to quote it at brief at page 292 of the Helena opinion from the devil. But that's precisely what Mr. Bobo is asking you to do impose a bright line rule that all sex offenders are precluded from having this restriction, which is called for by the sentencing guidelines in the policy statement that all sex offenders and in federal court, a large portion of sex offenses involve the Internet, that this is a tool that's going to be removed from all district court judges. And that's inappropriate. In this particular case, and as Judge Marcus referenced the tailoring, there was tailoring that was done with Mr. Bobo, perhaps answering what's done here. And so, Your Honor, there was no objection. So the statement of reasons perhaps could have been lengthier. But recall, we have Mr. Bobo of recidivist sex offender who during the course of his time as a required sex offender registration, failed to register. And when he when he failed to register, he committed probation violations. So that's in this way, Mr. Kovrinsky, is it your view, then that a district court judge could bar a sex offender who was convicted from ever accessing any of the basic news sources that he would online, the Wall Street Journal, the New York Times, he would be barred forever? Don't you suppose that's a big deal and has a powerful First Amendment implication? So it's, that's not the ban that's precisely in place here. But that is a big deal. What do you see is the ban that's in place here, we know, from the wording, that if he needs access to the computer, for employment reasons, he can apply to the court for relief. But can he apply for any other relief? Nothing more than, hey, I want to know what's going on with the news concerning the presidential election of 2020. And I get all my news online. I'm barred. I can't do that. Does he have any possible remedy or relief regarding that? Well, there are several possible remedies and reliefs. Ms. Cain, and she correctly restated all of the conditions with respect to the restrictions. He can apply to the court, he can apply for a modification after one year, that's noted in the footnote in Carpenter that there is the prospect of a modification. And, Your Honor, to the extent that there is this dynamic that Ms. Cain referenced with respect to the COVID situation, and our ever-increasing reliance on the internet, the court should tread cautiously. As it noted in Zinn in 2003, this is something where there's concomitant dangers and benefits. And so in treading cautiously, we shouldn't take a case that wasn't adversarially litigated below where the record wasn't developed to make this pronouncement or to make this judgment. And so just to turn back to the record, Ms. Cain's time range called for a sentence of 324 to 405 months on count one, and then the additional 10 years. But what the court stated at docket entry 99, page 17, in granting a very substantial downward variance for this recidivist sex offender was that the court will impose a period of supervised release that I believe that that, in addition to the most possible generous variance she was able to impose, a 20-year sentence was the sentence that Mr. Vogel was eligible for, and less than half of what the guidelines called for, that with that life term of supervised release, this will be sufficient to ensure that you're not a danger to the community. So the least possible sentence, but also the life term of supervised release for this recidivist who also had probation violations. I think... Suppose we weren't reviewing this for plain error. That is to say, let's just suppose counsel had the presence of mind to say to the judge, for the same offense, that this is a powerful restriction on his First Amendment rights, and he wants to watch the news. Maybe there's some other remedy, judge, like we can shut off access to certain sites or something, but my client wants access to basic news. Suppose the judge had said, no, I think the risks are too great, and I'm imposing this ban. Would that be narrowly tailored? Would there be a problem then? So the posture we would have is this recidivist who also has a probation violation, and if I recall, it would be a sentencing package, and... I'm sorry, judge. Oh, yeah, that's exact. Same set of facts except the matter was raised, addressed, and rejected by the district court. And so that would present a different question for this court, and it would be one that wasn't put forth. I agree, but I'm asking you to help me with that. Yeah, and so... Because I wanna know how far, candidly, a district court can go to shut down access to basic news. And what I would submit to you, your honor, is each case needs to turn on its backs because that access is ever changing, and we don't wanna handcuff district courts who have to deal with this on a daily basis with a whole host of different offenses involving the internet, whether it's finance fraud schemes or sex offenses, and we don't wanna impose bright line rules, which is necessary to resolve this instant appeal. It would have to be... How broad is this restriction when it restricts a defendant on supervised release from accessing... From using a computer that uses either an external or an internal modem to connect to the internet? Would that mean that, for example, that he couldn't use a smart television that uses WiFi to watch the news? Your honor, I'm not precisely sure if the modem is built into the smart television, but... It doesn't matter. Internal or external is what the restriction says, right? And so then when you go to the WiFi, I think that that would necessarily... He couldn't use a smart television to watch the news. Well, he could use a smart television provided it was a cable link up, but not through WiFi, which is the way you described, and assuming that there isn't a built in modem. But these are facts that should be developed at the district court, but I do agree that there are concerns with respect to the implications here and the tailoring, but this wasn't challenged at the district court level. And so he receives the sentencing package, which gives the court assurance that notwithstanding this maximum downward variance, I'm gonna be able to protect the danger you pose to this community, and only now is he challenging those other conditions after he received the benefit of that variance. And while those are troubling issues and these are ever evolving technologies, that's why they should be decided on case by case basis adversarially. Is it your position that nothing would prevent the defendant when he completes his term of sentence, and well, at least his prison sentence, and is on supervised release? Of course, a lot can change in 20 years. Precisely. But who knows what the world will be like. 20 years ago, I could not have predicted computer usage of the kind that I routinely use now. But in 20 years, he could seek a modification of the terms of this supervised release to make the kind of arguments that we're talking about, about, for example, access to the news or whatever, and make a record about that. And that could then, depending on how the district court rules and on that request for a modification, that could come up to us. Precisely, Your Honor. And it would still have to be subject to the same requirements under 3583, and it would have to serve the interests of justice. But it would be... Not that this is not right, but we're not suggesting that it's not right. But because it hasn't been litigated... Well, this issue is right. I mean, whether this was plain error to impose this condition. But that's not to say that if we were to hold that it was not plain error, that he would be barred from, once on supervised release, seeking a modification and making a record that could still enable the courts to review the restriction. Yes, that's correct, Your Honor. If there are no further questions, I respectfully submit that the distinctions that have already been drawn show that Packingham does not directly resolve this. There's already an 11th Circuit case that I cited in the Supplemental Authority. While it's not a published opinion, that and other unpublished opinions from the 11th Circuit all have declined to extend Packingham in the Volvo Year 6. And there are also other circuits that have also declined to extend Packingham, and only the 3rd Circuit, which, while it offered guidance on Packingham, it was under a different posture that doesn't apply for the reasons I already stated. And so I would respectfully request that you affirm. Okay. Thank you, Mr. Brinsky. Ms. Cain, you've saved three minutes. You're muted, Ms. Cain. Sorry. That's okay. Your Honors, I wanted to respond in a couple of ways. First, I would like to draw your attention to a quote from Packingham. And the court did certainly say, as opposing counsel mentioned, that we have to be cautious in the First Amendment context because the internet is constantly evolving. But the way that Packingham court closed, or sort of closed that thought, was the court must exercise extreme caution before suggesting that the First Amendment provides scant protection for access to vast networks in that medium. So that is the caution that the Packingham court was asking courts to apply. Not, oh, you have to be hesitant and give more control to the district courts, but we have to be really cautious in saying the First Amendment doesn't protect access to the internet. A couple of other points I'd like to respond with. Let me ask you though on that, Ms. Cain. Yes, sir. There would be nothing, as Judge Pryor suggested, that would stop you, your client, once on supervised release from seeking a modification in order to obtain access to news on a computer, right? Government's conceded that. I have a practical response and a legal response to that. I'll start with the legal response. I don't think that the ability, the potential that he may move for a modification, which of course is not that he may be granted a modification, makes this more constitutional in the same way that were there to be an appellant before your honors who was challenging his sentence as excessive under the Eighth Amendment, the ability for him to move for compassionate release would not make that sentence constitutional if it were otherwise unconstitutional. And then there is a practical response here. Your honors are familiar with Mr. Bobal. Individuals are not entitled to an attorney when they want to move to modify their supervised release. Mr. Bobal is intellectually disabled and mentally ill. So I think there's both a legal response to that and a practical response. The future potential that he may be able to move for a modification um does not make this otherwise ban constitutional. There is another um distinction. Yeah, the problem with that, particularly the second point is that makes that also makes the likelihood that he could really make the case for needing access um to the computer. Um you know, less compelling. Your honors, I really having reviewed Mr Bobal's, I sentencing, but of course my office did and I, you know, this was an individual who was incompetent for in between his conviction and sentencing. Um, there were real questions about whether Mr Bobal when we're talking about narrow tailoring could really move for a modification. Um, I also did want to, I forgot to clarify to make the point that the statute that Packingham struck down was not was not a restriction imposed on all convicted sex offenders. It was actually only on those convicted sex offenders who had to register. And North Carolina has a very complex scheme for who has to. The registration isn't specific to those who have committed their offenses by use of a computer, right? It is not. And Mr Bobal in this case, um, this this particular offense relates only to texting. Um, as as I think your honors no. Um, okay. Um, yeah, yeah. Um, uh, you have anything else, Miss King? Very quickly, your honors. I just I think that the pandemic has made clear as I mentioned all of the ways in which our lives rely entirely on the Internet. It is a lifeline. And by imposing a lifetime ban, what is essentially happening here is that Mr Bobal has been banished from modern life. I think Packingham makes that completely unconstitutional. Thank you. Thank you. Um, we have your case and, uh, well, we thank you both. We're gonna move on to the next one.